Freeman, J.,
delivered the opinion of the court.
The bill is filed to enforce the vendor’s lien for a balance of the purchase money on a tract of land sold by Sproles to Powell, in 1856.
The first defence of Powell is that as to the amount of $825, he has been discharged by a decree in a former suit between the parties, in which it was decreed that Powell was entitled to an abatement of 'that amount, on account of a failure in the considera *694 tion, growing out of a misrepresentation of Sproles-as to the land sold. It appears that such ■ a decree was rendered in 1861, and that Sproles appealed from it to the Supreme Court and executed bond for the appeal, but the transcript was never sent up to this court, and all' the papers in the cause except the^ decree were destroyed by fire in the burning of the clerk’s office, and that the papers cannot now be supplied.
In the case of Alley v. Gardenhire, determined at this court in 1871, it was held that in case of the loss of a record, when it appears that it cannot be supplied, this is such an inevitable accident as will authorize the Court of Chancery to take jurisdiction- and give relief by a new suit. The case must therefore be determined on its merits as- presented in the record.
It appears, that in 1856, Sproles sold to Powell a ' tract of land of two hundred and sixty-three acres,, more or less, for $2,000 on time, for which notes were executed by Powell, and a title-bond by Sproles. In the bond, the land is described by metes and bounds, estimated to contain two hundred and sixty-three acres, more or less, for which the gross sum. of $2,000 was to be paid. It appears that-there was no deficiency in the quantity of the land, nor any defect in the title of Sproles to the land included within the boundaries. But in his answer, which by agreement is to be taken as a cross-bill. Powell charges that when he purchased the land, Sproles represented to him that a strip of about thirty acres, *695 adjoining the tract, as described in the bond, belonged to it and was embraced in the sale, and that this was a-fraudulent representation, as Sproles knew that this strip was outside of his boundaries. .Sproles is to be taken as denying this charge, according to the agreement of the parties in the record, and this raises the question of fact on which the case turns.
Assuming that the allegations of Powell, supported by his own testimony, are neutralized by the denial of Sproles, supported by his testimony, the burden of proof rests on Powell to make out his charge of fraud. To do this, he relies on the evidence of one witness, Hunt. This witness says he was along with complainant and defendant about the time of the trade. He says: “I saw Sproles point out to Powell the line in dispute between them in this cause. We were standing near the point where the two lines separate,. not .far from the East corner of the survey of the disputed parcel of land. Sproles pointed to a dead chestnut, and to the corner of Galloway’s fence (Galloway being the claimant of the disputed parcel) which ranged with each other, and said that the line ran by that said dead chestnut and to the corner of the fence, and with the fence to the back line. I was present on May 28, 1869, when Gains surveyed the disputed parcel, and I was called on to point out the line shown by Sproles to Powell, which I did, and Gains surveyed the parcel accordingly.” If this testimony is to be credited, it sustains the allegation of the bill. ' But it is to be observed that it was in August, 1856, when the trade was made between *696 Sproles and Powell. The witness was examined in November, 1869, more than thirteen years after the transaction which he details. Upon cross examination he acknowledges to a total want of recollection of anything said or done by the parties except that already stated, nor can he recollect anything else that occurred at the time, although specifically interrogated as to various matters connected with the transactions, his uniform answer is, “I don’t recollect.”. Upon re-examination, in explanation of his- failure to recollect anything else than the pointing out of the disputed line by Sproles, he says: “ The reason I rembember this fact so distinctly is, that the dispute arose about the line in a short time, and my attention was called to it by Powell, who told me that the strip in question did not belong to the farm.” It is remarkable that the witness could not recollect the fact, stated by Powell in his testimony, that “he went with us back to where Easley’s line strikes the fence and looked around there for the corner, but could not find it, but Sproles said it was there somewhere.” The witness Hunt has no recollection of this, but says, “I do not remember anything that was. done that day except the pointing out of the disputed line by Sproles.” And the only reason that he remembers that, is that Powell soon afterward called his attention to it. Yet it is upon the recollection of this witness, more than thirteen years after the transaction, that the charge of fraud rests. We are to believe that after so long a time, the witness could not only recollect what was said and done as de *697 tailed by bim, but that he could go to the spot where they stood and point out the ideal line, with nothing but the dead chestnut tree to guide him, and that tree gone when he was thus called on to point out this line, and when there was no proof that there had been no change in the fence during the thirteen years that had elapsed. We cannot feel satisfied to fix the charge of fraud upon the evidence of a witness whose recollection is so unreliable.
It is unreasonable that Sproles should attempt to practice such a fraud, when the bond contradicting the alleged representation was immediately executed by him, thus furnishihg to Powell the evidence of his own fraud, which would be at once exposed.
We are therefore of opinion that Powell has failed to make satisfactory proof to. support the allegation o.f fraud, and that he is therefore not entitled to set-off the alleged damages.
The decree of the Chancellor is reversed and the cross-bill dismissed; and a decree rendered for the enforement of the vendor’s lien for the balance of the purchase money.
The defendant in the original bill will pay the costs of this court and the court below.